UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



NATHANIEL LEE DAVIS,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.

18-CV-00422-MJR
DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 15)

Plaintiff Nathaniel Lee Davis ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Plaintiff has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, to which defendant has responded. (Dkt. No. 14) For the following reasons, plaintiff's motion (Dkt. No. 10) is denied, and the complaint (Dkt. No. 1) is dismissed.

---

[1] The Clerk of Court is directed to amend the caption accordingly.

## BACKGROUND[2]

On October 24, 2014, plaintiff protectively filed an application for SSI alleging disability due to bipolar disorder, anxiety, agoraphobia, and wrist and back issues. (Tr. 73, 81, 198-204, 259-66)[3] His claim was denied initially, and he requested a hearing before an Administrative Law Judge ("ALJ"). On June 23, 2017, Administrative Law Judge ("ALJ") Connor O'Brien held a hearing in Rochester, New York, at which plaintiff appeared with counsel and testified. (Tr. 64-109) An impartial Vocational Expert ("VE") also testified. (*Id.*)

The ALJ issued an unfavorable decision on September 29, 2017. (Tr. 8-35) The Appeals Council subsequently denied review (Tr. 1-6), and this timely action followed. (Dkt. No. 1)

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which is set forth in their briefs and thoroughly discussed in the ALJ's decision. (*See* Tr. 14-29) The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[3] Citations to "Tr.___" refer to the pages of the administrative transcript. (Dkt. No. 8)

2

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the

claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant

4

does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

5

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 24, 2014, the application date. (Tr. 13) At step two, the ALJ found that plaintiff had the severe impairments of adjustment disorder; bipolar disorder with mania; post-traumatic stress disorder ("PTSD"); and substance dependence. (Tr. 13) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: he could adjust to occasional changes in the work setting, and make work-related decisions; he could not interact with the public and could not perform tandem/teamwork; he could perform simple, unskilled work that is primarily with things rather than people; he could work to meet daily goals, but needed direction in pace; and he could not perform at production assembly-line rate. (Tr. 19-30) At step four of the sequential evaluation, the ALJ concluded that plaintiff had no past relevant work. (Tr. 30) At step five, the ALJ found that, considering his RFC, age, education, and work experience, plaintiff could make an adjustment to other work existing in significant

numbers in the national economy. (Tr. 30-31) Accordingly, the ALJ determined that Plaintiff was not under a disability within the meaning of the Act. (*Id.*)

IV. *Plaintiff's Challenges*

Plaintiff argues that remand is required because the ALJ erred in relying on a stale state agency opinion and by "cherry-picking" evidence to support the formulated RFC. (*See* Dkt. No. 10-1 ("Pl. Mem.") at 1, 25-32; Dkt. No. 14 ("Pl. Reply") at 1-5) The Court disagrees.

Generally, "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history." *Robinson v. Berryhill*, No.17-CV-0362, 2018 WL 4442267, *4 (W.D.N.Y. 2018). "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 Fed. Appx. 25 (2d Cir. 2016) (quotation omitted); *accord Davis v. Berryhill*, No. 16-CV-6815, 2018 WL 1250019, *3 (W.D.N.Y. 2018). "The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, No. 16-CV-1005, 2018 WL 3868721, *4 (W.D.N.Y. 2018); *see also Best v. Berryhill*, No. 17-CV-0795, 2019 WL 1146341, *3 (W.D.N.Y. 2019) (in determining whether opinion evidence is stale, the "relevant issue is whether [claimant's] condition *deteriorated* during [the relevant] period.") (emphasis in original).

Plaintiff challenges the two opinions by consulting physicians Drs. Harding and Luna because they were rendered two years prior to the ALJ's decision. (Pl. Mem. 26-27)

7

State agency psychologist Dr. T. Harding opined in April 2015 that plaintiff had mild limitations in activities of daily living and moderate limitations in maintaining social functioning and maintaining concentration, persistence, and pace. (Tr. 114) He further opined that, except for moderate limitations working in coordination with or proximity to others without being distracted by them, getting along with coworkers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting, plaintiff had no significant limitations in any functional category. (Tr. 117-18) The ALJ gave this opinion "some weight," explaining,

> Dr. Harding is not a treating or examining physician. Therefore, to the extent that her opinion comports with the overall evidence of record as discussed in detail above, I have accounted for it in the [RFC] finding by limiting the claimant to simple and unskilled work that primarily involves things rather than people, occasional changes to the workplace setting, no interaction with the public, no tandem or teamwork, and no production assembly-line rate work.

(Tr. 28)

In April 2015, consultative psychiatrist Dr. Kristina Luna evaluated plaintiff and opined that, except for community engagement, plaintiff had good adaptive functioning. (Tr. 361) Dr. Luna identified mild limitations in maintaining attention and concentration, moderate limitations in relating adequately with others and appropriately dealing with stress, and difficulties caused by distractibility. (Tr. 361) She further opined that plaintiff had no limitations in following and understanding simple instructions, performing simple tasks independently, maintaining a regular schedule, learning new tasks, and making appropriate decisions. (Tr. 361)

The ALJ considered and assigned Dr. Luna's opinion some weight, reasoning that the limitations for interacting with others and dealing appropriately with stress were

generally consistent with the overall record evidence, but the record warranted greater restrictions than Dr. Luna had identified for dealing with the public and performing detailed or complex tasks. (Tr. 28) Thus, in formulating the RFC, the ALJ limited plaintiff to simple, unskilled work, occasional changes in the work setting, and no work at a production assembly-line rate, no public contact and no tandem/teamwork.

Contrary to plaintiff's assertion, these opinions were neither stale nor improperly relied upon. The ALJ explicitly accounted for additional limitations, greater than those assessed by the consulting and review psychologists, to comport with the record as a whole. Here, the ALJ discussed plaintiff's treatment after the 2015 opinions, including his treatment with Richard Canton, LCSW, and psychiatrist Patrick Stein, MD, between 2015 and 2017. In discussing the treatment records at length, the ALJ concluded that, during the time period plaintiff asserts his condition deteriorated, plaintiff's mental status examinations were "relatively unremarkable," and that plaintiff reported significant activities, including working on car restoration projects, increased socialization with friends, snowmobiling, household chores, child care, and playing guitar. (Tr. 22-27) She noted plaintiff's brief hospitalization in March, 2016, due to a medication interaction, and also discussed the medical treatment notes following that incident.[4] (Tr. 27)

A review of the record supports the ALJ's analysis of the opinion evidence. For example, plaintiff's treatment notes indicate that his condition was consistently stable with medication and his mental status exams were generally unremarkable. (Tr. 485, 491, 500, 507, 519, 547, 551, 557, 559, 561, 568, 572, 574, 576, 584, 599, 60-602, 605-06,

---

[4] Plaintiff was hospitalized for a week in March, 2016, due to a medication interaction causing symptoms of mania. He was stabilized on medication within a day of his admission, and subsequently reported satisfaction with his medication regimen. (Tr. 689, 700, 702, 704, 706)

9

609-10, 613-14, 617, 619-20, 623, 651, 653, 657-58, 661-62, 665-66, 668-69, 672-73, 676-77, 680-81, 684-85, 688-89, 695-96, 701, 704, 706, 710). (Tr., 672-73, 676-77, 680-81, 684-85, 688-89, 692-93) Plaintiff reported robust daily activities after the April 2015 opinions. He testified at the administrative hearing in June 2017 that he cared for his four children, watching and bathing his younger children, preparing their meals, and assisting with homework. (Tr. 76, 81, 87) Plaintiff performed multiple household chores, including cooking, grocery shopping, cleaning, vacuuming, and making repairs to the house, car, and home appliances. (Tr. 76-77, 82-83, 87-91) Additionally, he played the guitar, wrote music, and worked on cars. (Tr. 76-78, 91) Thus, the ALJ properly considered the evidence post-dating the consulting opinions in reaching the RFC, which is supported by substantial evidence. *See Andrea L. v. Saul*, No. 18-CV-858, 2019 WL 4170289, at *8 (N.D.N.Y. Aug. 30, 2019) (rejecting staleness argument where there was no indication that plaintiff's mental limitations significantly deteriorated and ALJ adequately assessed post-opinion evidence); *Szefler v. Comm'r of Soc. Sec.*, No. 18-CV-668, 2019 WL 4168538, at *8 (W.D.N.Y. Sept. 3, 2019) ("The ALJ appropriately evaluated the medical opinions through the lens of the evidence available to the examiners at the time, as well as in the context of the evidence offered since the opinions were authored, and formulated the RFC based on his consideration of the record as a whole.").

The evidence of record, both before and after the consulting opinions, was consistent with the formulated RFC, and the ALJ did not rely upon "stale" opinions in reaching her determination. *See Camille v. Colvin*, 652 Fed. Appx. 25, 28 n. 4, 2016 WL 3391243 (2d Cir. 2016) (rejecting contention that State agency psychological consultant's

opinion was stale because it did not have the benefit of later-submitted treatment records and treating physician evidence).

Additionally, plaintiff contends that the ALJ's "cherry picked" Dr. Luna's opinion and failed to put forth reasons for discrediting portions of it. (Pl. Mem. 29-32)[5]

The ALJ discussed Dr. Luna's opinion in detail, including Dr. Luna's opinions that Plaintiff had mildly impaired attention and concentration and difficulties with complex tasks. (Tr. 27-28) The ALJ expressly declined to adopt a mild limitation for performing complex and detailed tasks because the overall record supported greater limitations, and thus the mental RFC was limited to simple, unskilled work. (Tr. 19, 28) Although the ALJ did not expressly discuss the portions of Dr. Luna's opinion indicating that plaintiff's difficulties were caused by distractibility and that his problems may interfere with his ability to function on a daily basis, the ALJ was not required to discuss every piece of evidence much less explain why he considered "particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Christina v. Colvin*, 594 Fed. Appx. 32, 33 (2d Cir. 2015).

Regardless of whether plaintiff's limitations were caused by distractibility, the RFC sufficiently accounted for the combined effects of his impairments, and the ALJ's disability determination would remain unchanged. Any error in this regard would therefore be harmless. *See e.g., Davis v. Callahan*, No. 96 CIV. 9367, 1997 WL 438772, at *12 (S.D.N.Y. Aug. 4, 1997), *aff'd sub nom. Davis v. Apfel*, 145 F.3d 572 (2d Cir. 1998) (ALJ's error in not explaining the weight afforded to non-examining physicians' opinion harmless

---

[5] Plaintiff has essentially requested that his Court re-weigh the evidence before the ALJ. This, however, is not the appropriate standard of review. *See Krull v. Colvin*, 669 Fed. Appx. 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.")

11

because "whether or not the ALJ gave this opinion evidence weight, the result would be the same," given that "the limitations in issue do not affect Plaintiff's ability to perform sedentary work.").

The ALJ properly considered the totality of the evidence of record, particularly, plaintiff's longitudinal treatment records, relatively normal mental exam findings, relief with conservative treatment, and extensive regular activities, and reasonably concluded that the overall record showed that plaintiff had greater than mild limitations in performing complex tasks and maintaining attention and concentration but would not have significant difficulties in daily functioning. See 20 C.F.R. §§ 416.927(d)(2), 416.945(a)(3), 416.946(c).

Likewise, it was appropriate to reject Dr. Luna's additional finding that plaintiff had psychiatric problems that "may significantly interfere with his ability to function on a daily basis," considering the totality of the evidence. (Tr. 361) See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (ALJ was free to accept portions of opinion that were supported by evidence and reject those that were not); see also SSR 96-5p, 1996 WL 374183, at *2. The ALJ in this case provided an extensive discussion of the record, including, but not limited to, a thorough summary of plaintiff's medical treatment, the hearing testimony, a Third Party Function report by plaintiff's mother, and the opinion evidence, all of which constitute substantial evidence to support the RFC finding. (Tr. 14-27) See Apr. B. v. Saul, No. 18-CV-682, 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (ALJ did not cherry-pick or ignore evidence where the ALJ "performed a detailed review of the evidence.").

For the reasons stated above, the Court finds that the ALJ's decision was free of legal error and supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is denied, and the complaint (Dkt. No. 1) is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: October 30, 2019
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge